WESTECH GEAR CORP., Plaintiff,

v.

DEPARTMENT OF the
NAVY, Defendant.

Civ. A. No. 88–956.

United States District Court,
District of Columbia.

Feb. 15, 1989.

Peter S. Latham, Latham & Latham, Washington, D.C., for plaintiff.

John C. Cleary, Asst. U.S. Atty., Washington, D.C., for defendant Dept. of the Navy; William Longwell, Associate Counsel and William R. Henderson, Associate Counsel, Naval Sea Systems Command, Department of the Navy, of counsel.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

Plaintiff has instituted this suit to obtain a declaratory judgment and injunctive relief prohibiting the Department of the Navy from reverse engineering a ram tensioner obtained from plaintiff. Currently before the Court are the parties' cross-motions for summary judgment.

### I

*Background*

Ram tensioners are used by the Navy to facilitate the transfer of supplies, ammunition and fuel between two moving ships in the open sea. Currently, Westech is the Navy's sole supplier of these tensioners,[1]

---

1. The Navy has not procured ram tensioners directly since the late 1960's. Instead, the per-

as well as the sole contractor for their overhaul, repair, and maintenance. In an effort to eliminate Navy dependence on Westech as a sole source for these goods and services, defendant on October 31, 1986 attempted to purchase from plaintiff unlimited rights in ram tensioner technical data, or alternatively, to enter into a licencing agreement for use of such data. Upon receipt of Westech's December 5, 1986 rejection of the Navy's purchase offer, defendant began arrangements to reverse engineer the Western Gear [2] Model 120C ram tensioner, efforts which are still in progress.

Westech seeks a declaratory judgment that the Navy's reverse engineering efforts have been instituted in violation of law, in that defendant (1) failed to assert its rights in the ram tensioner data by removing the restrictive legends from the Westech drawings in its possession, thereby thwarting appeal of the determination; (2) failed to follow the steps set out in Department of Defense Federal Acquisition Regulation (DFAR) 17.7201–2 prior to reverse engineering; and (3) disclosed confidential information in violation of 18 U.S.C. § 1905.

■ As an initial matter, it must be determined whether a determination of the merits of this dispute is properly before this Court or, more appropriately, in the United States Court of Claims. Plaintiff alleges that the proper method of challenging its right to ownership of the design and manufacture of the ram tensioners was for defendant to remove the restrictive legends from its drawings, and then to afford plaintiff an opportunity to contest that determination within the administrative procedures established for contract disputes. Generally, contract claims by the government against a contractor must be made by final decision. 41 U.S.C. § 605(a). Upon receipt of a proper final decision, the contractor is entitled to appeal that decision to the agency board of contract appeals, 41 U.S.C. § 606, or to the United States Claims Court. 41 U.S.C. § 609(a)(1), (3). Plaintiff takes exception to defendant's failure to comply with these administrative procedures prior to embarking on its course of reverse engineering, and urges the Court to remand the case back to the agency for appropriate action.

■ It is the Court's view, however, that this dispute is not founded upon a contract between the parties, but rather arises as a controversy over proprietary rights. The classification of a particular action as one which is or is not at its essence a contract action depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate). *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C.Cir.1982). Plaintiff does not claim a breach of contract, it seeks no monetary damages against defendant, and its claim is not properly characterized as one for specific performance. Plaintiff's position is ultimately based, not on breach of contract, but on an alleged governmental infringement of property rights and the Trade Secrets Act. Therefore, the Court finds that this is not essentially a contract action requiring conformance with the administrative procedures of Title 41 of the United States Code, and that there has been no procedural violation as to the manner that plaintiff has been accorded, or denied, review. The correct method for obtaining review of defendant's decision to reverse engineer ram tensioners is that which plaintiff has pursued—to come before the United States District Court alleging an abuse of discretion under 5 U.S.C. § 706(2)(A)—and it is on that basis that the Court will analyze defendant's actions.

The parties vigorously dispute the question whether Westech or the Department of the Navy can in fact lay claim to the rights to the subject ram tensioners. Defendant insists that all contracts for development and modification of the tensioners included provisions granting the govern-

formance specifications for contractor-furnished ram tensioners are incorporated in shipbuilding specifications, and purchased from Westech by the shipbuilder.

2. Western Gear Machinery Company was plaintiff's predecessor in interest, from which Westech obtained any and all rights it might possess in the ram tensioners at issue here.

ment full rights in their design. Plaintiff counters that defendants received only Class B drawings of the ram tensioners, from which manufacture of the product is not possible,[3] and that it therefore retained rights in the product's design. For purposes of this lawsuit, however, resolution of this question is not necessary.

■ Reverse engineering occurs when an entity starts with a known product and, working backwards, divines the process which aided in its manufacture. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974). As long as only the use of the goods themselves is involved, rather than design information in which someone else may have proprietary rights, reverse engineering in no way violates any rights another party may have in a trade secret.[4] Furthermore, because plaintiff did not obtain patent protection of its design, it is not entitled to a monopoly position in the manufacture of the ram tensioners, nor the concomitant right to prohibit others from their manufacture. *See e.g., Anti–Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 300 (9th Cir.1979). The doctrines embodied in this country's intellectual property laws would thus provide no assistance to plaintiff in its claim against defendant, even if it were established that it were the sole owner of the design rights to the ram tensioner. For that reason, the question of design right ownership need not be resolved in the context of this lawsuit.

The focus of inquiry thus shifts to the propriety of defendant's actions in determining that reverse engineering of the ram tensioner was appropriate, given the statutory and regulatory framework guiding the Department of the Navy. Department of Defense Federal Acquisition Regulation Part 17, Subpart 17.72 governs the acquisition of component parts through special contracting methods.[5] Its prefecatory language sets forth the departmental policy of providing incentive to industry creativity by "honoring the rights in data resulting from private development and by limiting the demands for such data to that which is essential for government purposes," DFAR 17.7201–1, and goes on to permit acquisition of necessary items either by competition, or if competitive acquisition is impossible, by a series of alternative procedures. DFAR 17.7201–2. One of those alternative procedures is to engage in reverse engineering.

Plaintiff does not dispute defendant's ultimate authority to order reverse engineering of an item. Its contention is, rather, that defendant erred in undertaking reverse engineering in this instance, because authority so to act exists as a last resort, and defendant here failed to take advantage of other alternative methods of procurement. Therefore, contends plaintiff, defendant's action was arbitrary and capricious and contrary to law. Additionally, plaintiff argues that the determination to reverse engineer the ram tensioners was procedurally flawed in that it was made by someone other than the contracting offi-

---

**3.** Class A drawings, which the defendant contends were delivered with the manufactured ram tensioners, are drawings of a sufficient level of detail to be utilized for commercial reprocurement. Defendant does not contend that Class B drawings are procurement drawings; one cannot reproduce an item by reliance on the information provided by Class B drawings.

**4.** There is an exception to this proposition when the reverse engineering has occurred through breach of a confidential relationship, or where the item to be reverse engineered has been obtained through some improper means. In this instance, however, plaintiff has freely exhibited the physical incarnation of its ram tensioner,

thereby precluding a claim of improper means or breach of confidential relationship.

**5.** A prerequisite for the application of the regulatory system described above is that the item in question be "privately developed"—that is, that the research and development cost of the item have been borne by a private entity rather than by the United States government. *See Bell Helicopter Textron*, ASBCA No. 21192, 85–3 BCA p 18,415 at 92,423 (1985). Defendant contends that plaintiff's ram tensioners are not "privately developed items" and that therefore the regulatory requirements of DFARS 17.7201–2(b) do not apply. Because resolution of this matter will not affect the outcome of this lawsuit, the Court will render no opinion as to its merits.

cer,[6] and that the reverse engineering process was begun prior to a formalized finding of need as required by the regulation.

Because this question arises in the context of a motion for summary judgment, the Court must construe the facts in the light most favorable to the party against which the motion is directed. The Court will first consider defendant's motion for summary judgment. For purposes of this discussion then, the Court will construe the facts in the light most favorable to plaintiff, and will assume that design rights to the ram tensioners properly accrue to plaintiff, and that they are "privately developed items" for purposes of reverse engineering.

## II

### DFAR 17.72 Requirements

■ In order to accomplish the goal of honoring the rights in data of defense contractors who privately develop items used by the military, DFAR 17.7201-2 details the acquisition methods to be used by contracting officers. According to these guidelines, a contracting officer seeking to purchase privately developed items who "does not have necessary data with unlimited rights for use in a specification for competitive acquisition," may use one of the following alternative procedures in order of preference:

(1) If items of identical design are not required, the contracting officer should provide for full and open competition using performance specifications such as "brand name or equal" purchase descriptions.

(2) If identical items are required and full and open competition is not mandatory, procurement should be from the firm that designed the privately developed item as long as productive capacity and quality are adequate and the price is fair and reasonable.

(3) If additional sources are required, the government should encourage the developer to license others to manufacture its

goods. It should also consider acquiring the necessary rights in data.

(4) As a last alternative, the government can use reverse engineering to develop a design specification for competitive acquisition.

In the event that the final alternative of reverse engineering is selected, two requirements must be satisfied: "Reverse engineering shall not be used unless significant cost savings can be reasonably demonstrated and the action is authorized by the Head of the Contracting Agency." 17.-7201-2(b)(4).

Westech claims that reverse engineering of the ram tensioner was undertaken improperly in this case because the Navy did not make a satisfactory effort to use the first three alternatives set forth in DFAR 17.7201(b) and because, having selected the alternative of reverse engineering, it did not satisfy the requirements of DFAR 17.-7201(b)(4). It seeks an order enjoining the reverse engineering of the ram tensioner until the Navy has complied with these requirements. The question now before the Court is whether the Navy has complied with these requirements.

## III

### Reverse Engineering as a Last Resort

The record is clear that the Navy made the decision to reverse engineer the ram tensioner as a last resort, after it had attempted to use the first three alternatives specified in DFAR 17.7201-2.

In its motion for summary judgment, plaintiff maintains that the Navy could obtain satisfactory substitutes for the ram tensioner using the "brand name or equal" process suggested in DFAR 17.7201-2(b)(1), but that it has not done so. It should be noted initially that plaintiff did not originally consider this first alternative to be a possibility worth considering. In a letter to the Navy dated August 11, 1987, Westech never mentioned this alternative and in fact stated that there were only

---

**6.** Defendant's regulations state that when the government desires to purchase privately developed items, the *contracting officer* shall use one

of several alternative procedures. DFAR 17.-7201-2(b) (emphasis added).

three alternatives.[7] Nevertheless, plaintiff now asserts that the Navy failed to consider this viable alternative. This is contrary to the undisputed evidence in this case.

The parties agree that in 1987 the Navy did attempt to introduce competition into the market for ram tensioners by entering into a contract with Lake Shore, Inc., Iron Mountain, Michigan, for the purchase of substitute ram tensioners equal to those manufactured by Westech.[8] This is the "brand name or equal" process specified in DFAR 17.7201–2(b)(1). As plaintiffs note, this is the first alternative that should be used by the Navy.

The result of this effort is also a matter of undisputed fact. Westech sued the Navy and Lake Shore for misappropriation of trade secrets and breach of contract and eight months of discovery ensued. The suit was resolved by summary judgment in favor of the Navy on April 26, 1988 and in favor of the private defendants on May 9, 1988. At the time that the original decision to reverse engineer the ram tensioner was made, this lawsuit was still ongoing. There is no doubt that a brand name or equal process which results in protracted litigation is not a viable alternative method of obtaining necessary equipment for the Navy.

The second alternative which the Navy was required to investigate was continued procurement solely from Westech. This alternative should be utilized "provided productive capacity and quality are adequate and price is fair and reasonable." 17.7201–2(b)(2). The impetus for the search for alternative suppliers of ram tensioners in the first place was the Navy's conclusion that the prices charged by Westech for the ram tensioners and for repairs were not reasonable. In a request for approval for reverse engineering, Stephen Roush, the Head of the Underway Replenishment Systems Branch of NAVSEA demonstrated a projected savings of $37.8 million due to reverse engineering. This projection was based on a cost of $150,000 per unit and a 25% reduction to account for increased competition. He also emphasized that Westech was charging $40,000 to overhaul ram tensioners.

Westech contends that these calculations were arbitrary and capricious. In fact, however, the parties agree that between 1982 and 1987, the price of ram tensioners varied from a low of $73,062 for a quantity of 45 to a high of $156,008 for a quantity of two.[9] It was not anticipated that the Navy would buy its ram tensioners in bulk, Westech does not contend that this was the normal practice, and in fact the Navy entered into a contract to buy just two ram tensioners from Westech in January, 1988.[10] It is clear that the price of ram tensioners varied considerably depending on the quantity purchased and the date of the purchase. Under these circumstances, it was not unreasonable to use an estimate of $150,000 per unit for the 1982–1992 time period. Finally, the use of the 25% figure was consistent with the regulations for such estimates contained in Defense Acquisition Regulation, Supplement No. 6, "DOD Replenishment Parts Breakout Program," S6:23, para. S6–303.5 (June 1, 1983). Based on these calculations, the Navy did determine, prior to its decision to undertake reverse engineering, that the price being charged was not reasonable.

There is also ample evidence in the record that the Navy did undertake to generate competition as specified in DFAR 17.-7201–2(b)(3). On October 31, 1986, Bernard Korach, Contracting Officer of NAVSEA wrote to Westech seeking to acquire or obtain a licensing agreement for the design

---

7. Letter from Daniel T. Vallerie, division manager, to Bernard Korach, Contracting Officer, Naval Sea Systems Command (August 11, 1987) (Attachment 12 to plaintiff's motion for summary judgment).

8. Plaintiff's Statement of Material Facts as to which There is no Genuine Dispute at 3; *See also* Attachment 6 to plaintiff's Motion for Summary Judgment.

9. Plaintiff's Statement of Material Facts as to Which there is no Genuine Dispute at 6.

10. The price agreed upon for these ram tensioners was $122,000 per unit. This price was agreed to after the decision was made to begin reverse engineering.

rights to the ram tensioner.[11] This offer was rejected by Westech on December 5, 1986.[12] In February 1987, after it had been informed by the Navy that it would undertake reverse engineering, Westech changed its position and offered to negotiate on a sale or licensing agreement.[13] Finally, in August, 1987, Daniel Vallerie, a division manager at Westech, sent a letter urging the Navy to maintain its sole source arrangement with Westech, but offering to sell the design for the ram tensioner for $2,800,000.[14] This offer also included provisions that Westech would remain the sole supplier for ram tensioners for the TAO Class and AOE 6 Class shipbuilding programs and would be awarded a contract for design services and would remain the design agent for ram tensioners for five years. Finally, it provided that Westech would have the sole contract for refurbishing ram tensioners for three years following the sale.

Although the DFARS regulation requires the Navy to attempt to purchase design rights or obtain licensing agreements for those designs, it does not require it to keep its offer open following a clear rejection on the off chance that the company will reconsider its decision. Furthermore, it does not require it to obtain design rights or licensing agreements at any price and regardless of the conditions attached. When Westech rejected the Navy's initial offer, it was proper for the Navy to resort to the final alternative of reverse engineering.

## IV

### Reverse Engineering

Before the decision to reverse engineer the ram tensioners was made, Stephen Roush made a finding as to cost savings as required by DFAR 17.7201–2(b)(4). He included this finding in his request for authorization to reverse engineer. This document was discussed previously and, as stated above, it reasonably demonstrates significant cost savings. In this case, however, Roush's calculations are not the sole support for the cost savings. Roush's calculations alone do not satisfy the requirements of DFAR 17.7201–2(b)(4), because the decision to reverse engineer must be authorized by the contracting officer. In this case, the original decision was made on the basis of Roush's calculations without any authorization from the contracting officer. This is clearly contrary to DFAR 17.-7201–2(b)(4). It is not the end of the story, however.

On June 3, 1988, the Navy did comply with the requirements of DFAR 17.7201–2(b)(4). It issued a decision paper, signed by William H. Rowden, Commander, Naval Sea Systems Command, that detailed the reasons justifying reverse engineering of the ram tensioner and granted retroactive authorization for the reverse engineering program. In support of the authorization was a full administrative record including a detailed request for authorization, copies of correspondence between Westech and the Navy, and a copy of the cost analysis originally compiled by Stephen Roush. This authorization was issued two months after the complaint was filed in this case.

While this authorization comes late, to the extent that it satisfies DFAR 17.7201–2(b)(4), it provides the substantive relief that plaintiff is seeking in this case. Plaintiff claims that the authorization does not contain findings sufficient to justify reverse engineering pursuant to DFAR 17.-7201–2(b)(2) and (b)(4) and that it is therefore arbitrary and capricious. The Court finds, however, that the authorization and its supporting documents provide ample support for the decision to permit reverse engineering.

**11.** Letter from Bernard Korach to A.K. Eitner of Westech (October 31, 1986) (Attachment 2 to Plaintiff's Motion for Summary Judgment).

**12.** Letter from Daniel T. Vallerie, Westech Division Manager, to Bernard Korach (December 5, 1986) (Attachment 3 to Plaintiff's Motion for Summary Judgment).

**13.** Letter from Daniel Vallerie to Bernard Korach (February 27, 1987) (Attachment 5 to Plaintiff's Motion for Summary Judgment).

**14.** Letter from Daniel Vallerie to Bernard Korach, *supra* note 7.

First, the request for authorization provides detailed support for the projected cost savings—support which reinforces the original calculations made by Roush.[15] It describes the willingness of a competitor to provide ram tensioners similar to those sold by Westech for over $20,000 less than Westech's recent price of $121,000. It projects that the price per unit following reverse engineering and competitive solicitation will be $20,000 below that price, or $80,000. More importantly, it details the high costs associated with repair of the ram tensioners by Westech and the willingness of independent contractors to make these repairs for half of the $40,000 charged by Westech. This is a sufficient and reasonable showing of cost savings and it satisfies the requirements of DFAR 17.7201-2(b)(4). Thus even if the original calculations were insufficient to demonstrate that Westech's price was unreasonable or that reverse engineering would result in significant cost savings, this decision paper provides any necessary supplemental support.

In addition, although it is not clear that DFAR 17.7201 requires any showing of fact other than the significant cost savings, the request for authorization provides clear evidence that the Navy did consider the other three alternatives prior to adopting the reverse engineering decision. First, it rules out alternative one by stating that cost considerations made it necessary to have ram tensioners with identical specifications. Second, in its discussion of the cost savings anticipated from the reverse engineering efforts, it demonstrates its reasons for concluding that the price charged by Westech—both for the ram tensioners and for repairs—were unreasonably high. And finally, it details its efforts at securing design rights or licensing agreements from Westech, and its reasons for concluding that those efforts were not worth pursuing.

Plaintiff argues that this authorization does not cure the arbitrariness of the original decision because it is a "post hoc rationalization" which is entirely self-serving. *See Trailways, Inc. v. I.C.C.*, 673 F.2d 514, 519 (D.C.Cir.1982). Unlike this case, *Trailways* involved a review of an agency adjudicatory proceeding under 5 U.S.C. § 556 and 557. Moreover, in *Trailways* it was clear from the record that the agency had not considered an important factor and had only considered it in trying to justify its decision before the Court. Here it is clear that the Navy undertook to satisfy the requirements of DFAR 17.7201-2. Its late authorization does not present new, post hoc justifications but formalizes the justifications that clearly motivated the original decision.

### V

### *Conclusion*

Even assuming that Westech has exclusive rights to the ram tensioner, the Navy has satisfied the requirements of 17.7201-2(b) and therefore is entitled to undertake reverse engineering. Plaintiff's motion for summary judgment states, "Plaintiff asks only that the Navy be enjoined until such time as it has complied with the DFAR terms and conditions." MSJ at 28. As the Navy has now complied with those terms and conditions, defendants' motion for summary judgment will be granted. There is therefore no reason to consider plaintiff's motion for summary judgment.

---

**15.** *See* Decision Paper, attachment A to government's Motion for Summary Judgment.