**BLACKHAWK INDUSTRIES PROD-
UCTS GROUP UNLIMITED
LLC, Plaintiff,**

v.

**UNITED STATES GENERAL SER-
VICES ADMINISTRATION,
Defendant.**

No. CIV.A. 2:04CV383.

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 9, 2004.

Thomas Brian Kelly, Esquire, Jerry L. Bowman, Esquire, Bowman Green Hampton & Kelly, PLLC, Chesapeake, Russell J. Gaspar, Esquire, Andrew J. Mohr, Esquire, Cohen Mohr LLP, Washington, DC, Counsel for Plaintiff.

Lawrence R. Leonard, Esquire, Managing Assistant United States Attorney, Norfolk, Counsel for Defendant United States.

Lee W. Crook, III, Esquire, Assistant Regional Counsel, Fort Worth, TX, Counsel for Defendant U.S. General Services Administration.

### OPINION AND ORDER

MORGAN, Senior District Judge.

This matter comes before the Court on the General Services Administration's ("GSA") Motion to Dismiss, Doc. 26, pursuant to FED. R. CIV. P. 12(b)(6). During a hearing conducted on October 29, 2004, the Court **DENIED** GSA's Motion to Dismiss. This Order explains the rationale for the ruling on the motion.

### PROCEDURAL BACKGROUND

Blackhawk filed a Motion for a Preliminary Injunction along with a Motion for a Temporary Restraining Order ("TRO") on June 29, 2004. During a hearing conducted on July 1, 2004, the Court granted Blackhawk's Motion for a TRO, thereby temporarily enjoining GSA until July 12, 2004. On July 9, 2004, the Court entered an Agreed Order by the parties extending the TRO until July 23, 2004 and setting a hearing on the preliminary injunction for July 26, 2004. On July 9, 2004, GSA responded in opposition to Blackhawk's Motion for a Preliminary Injunction; Blackhawk replied on July 15, 2004. On July 26, 2004, a hearing was held at which the Court granted Blackhawk's Motion for a Preliminary Injunction. Jurisdictional issues were raised at the time and the Court ordered a hearing scheduled to address these concerns. On October 29, 2004 the Court held the hearing and **DENIED** GSA's Motion to Dismiss.

### FACTUAL BACKGROUND [1],[2]

Blackhawk manufactures, markets, and sells tactical products including assault vests, equipment harnesses, packs, hydration systems, holsters, equipment and ammunition pouches, rifle slings, Kevlar gloves and similar items designed primarily for military combat use, but usable by law enforcement and related entities as well. (Noell AFF [3] ¶ 2.) It is currently an approved supplier of such products through six Multiple Award Schedule ("MAS") contractors holding Federal Supply Group ("FSG") 84 Schedule contracts, and has been such since 1996. (Noell AFF ¶ 4.) These contracts allow federal agen-

---

1. The facts are those presented by the parties in their motions and at the preliminary injunction hearing on July 26, 2004. For a more detailed factual background, see the Order granting Plaintiff's mot. for prelim. inj., entered on November 10, 2004, Doc. 37.

2. At the July 26, 2004 hearing on Plaintiff's mot. for prelim. inj., the Court granted both Plaintiff and Defendant leave to submit any factual evidence which would impact the Court's factual findings. (Tr. 77:17–20, Doc. 30.) Defendant did so at the October 29, 2004 hearing on Defendant's mot. to dismiss.

The Court will consider the submissions when weighing the evidence at trial; however, none of the evidence either singularly or cumulatively has sufficient weight to cause the Court to reconsider its granting of the preliminary injunction at this stage.

3. "Noell AFF" refers to Aff. of Michael M. Noell in support of Mot. for TRO and Prelim. Inj., subscribed June 22, 2004, Ex. A to Mem. in Support of Plaintiff's Mot. for TRO and a Prelim. Inj., received June 29, 2004.

cies, departments, and offices to order products such as Blackhawk's without having to complete the steps necessary for non-Schedule purchases. (Ex. B to Pl. MEMO[4].) The Trade Agreements Act ("TAA") prohibits federal agencies from purchasing products from countries that have not signed the Agreement on Government Procurement ("AGP"). 19 U.S.C. § 2512. As implemented by the Federal Acquisition Regulations ("FAR"), the TAA does not apply to the "acquisitions of arms, ammunition, or war materials, or purchases indispensable for national security or for national defense purposes...." FAR § 25.401(a)(2) (Throughout this Order, the products listed in this regulation will be referred to collectively as "war materials.")[5]

In 2001, Blackhawk moved its production facility from Korea to Vietnam after allegedly confirming with GSA that Vietnam was an acceptable trading partner because it had entered into a Bilateral Trade Agreement with the United States in 2001. (Noell AFF ¶¶ 9, 10; Ex. 1 to 1st Stoker.[6]) To the extent GSA approved production in Vietnam, it was mistaken, except as to "war materials," because Vietnam has not signed the AGP. On October 8, 2003, Blackhawk contacted GSA concerning its threatened removal of Blackhawk's products from the FSG 84 Schedule because Vietnam was not an approved country under the TAA. (October 8, 2003 email correspondence, Ex. 7 to 1st Stoker.) On October 14, 2003, Blackhawk requested that GSA recognize an exemption from the TAA because its products were "war mate-

rials." (Ex. 8 to 1st Stoker.) GSA Regional Counsel Jerry Ann Foster determined that Blackhawk's evidence did not support the "war materials" exemption. (Ex. 16 to 1st Stoker.)

### STANDARD OF REVIEW

 The standards for dismissal under FED. R. CIV. P. 12(b)(1) and 12(b)(6) are slightly different. In the face of a 12(b)(1) motion, the burden falls on the plaintiff to prove that jurisdiction in this Court is proper. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The Court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir.1993); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). The Court must presume the factual allegations of the complaint as true, but it need not draw argumentative inferences in the plaintiff's favor. *Com. of P.R. ex rel. Quiros v. Alfred Snapp & Sons*, 632 F.2d 365 (4th Cir.1980), *aff'd* 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982); *see also DeBauche v. Va. Commonwealth Univ.*, 7 F.Supp.2d 718 (E.D.Va.1998).

### SUMMARY

GSA's Motion to Dismiss is **DENIED**. This Court does have jurisdiction pursuant to 28 U.S.C. § 1331 to hear claims brought under the Administrative Proce-

---

**4.** "Pl. MEMO" refers to Mem. in Support of Plaintiff's Mot. for TRO and a Prelim. Inj., received June 29, 2004.

**5.** The term "war materials" at times has been used by the Plaintiff and the Defendant generically to include all items used in the exemption, i.e. the "acquisitions of arms, ammunition, or war materials, or purchases in-

dispensable for national security or for national defense purposes" and is used in its broad generic sense in this Order.

**6.** "1st Stoker" refers to First Decl. of Kellie M. Stoker in Opposition to Mot. for Prelim. Inj., filed July 12, 2004.

dure Act § 702 challenging agency action. The Contract Disputes Act is not applicable and thus Blackhawk's claim does not have to be brought in Federal Claims Court. The TAA does not preclude Blackhawk from bringing this claim. Additionally, Blackhawk has standing under the Administrative Procedure Act as Blackhawk satisfies both the constitutional and the prudential requirements. Further, the Contracting Officer's application of the "war materials" exemption is not committed to unfettered agency discretion, rather such application must be exercised consistent with law.

## I. Jurisdiction

### A. This Court does have jurisdiction pursuant to 28 U.S.C. § 1331 to hear claims brought under APA § 702 challenging agency action.

■■■ The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 when a federal statute creates the cause of action or the plaintiff's right to relief depends on a substantial question of federal law. *See Battle v. Seibels Bruce Ins. Co.,* 288 F.3d 596, 606–07 (4th Cir.2002). The APA does not on its own confer on the courts jurisdiction to review agency action. *See Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Instead, Congress conferred such jurisdiction when it amended § 1331 in 1976. *See id.*[7] Thus, federal courts would have jurisdiction to hear claims arising from agency action brought under the APA unless a subsequent statute either conferred jurisdiction upon another court or specifically precluded district courts from having jurisdiction. *See id.*

■■■ Here, Blackhawk brings suit under the APA challenging agency action. Plaintiffs may challenge agency action under the APA even if a private right of action does not exist under relevant statute. *Chrysler Corp. v. Brown,* 441 U.S. 281, 317–18, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (holding that although no private right action exists under FOIA or under the Trade Secrets Act, a government contractor could sue under the APA to prevent disclosure of its employment information by the Defense Logistics Agency). Further, as the next sections of this Order will show, the TAA does not preclude district courts from hearing Blackhawk's claim, nor does the TAA confer jurisdiction upon another court.

GSA cites several cases for the proposition that the Court does not have jurisdiction pursuant to § 1331 to hear Blackhawk's claim. These cases are all inapplicable.

In *Merrell Dow Pharmaceuticals, Inc. v. Thompson* ("*Merrell*"), 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) the Supreme Court found that the Federal Food Drug and Cosmetic Act, *id.* at 810, 106 S.Ct. 3229, did not authorize a private right of action and held that the plaintiff could not assert federal jurisdiction on a state law claim simply because the alleged negligent action was a violation of a federal statute, *id.* at 817, 106 S.Ct. 3229. *See also Mulcahey v. Columbia Organic Chems. Co.* ("*Mulcahey*"), 29 F.3d 148,

7. "On October 21, 1976, Congress enacted Pub.L. 94–574, 90 Stat. 2721, which amends 28 U.S.C. s 1331(a) to eliminate the requirement of a specified amount in controversy as a prerequisite to the maintenance of 'any (s 1331) action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.'

The obvious effect of this modification, subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Id.*

152 (4th Cir.1994) (finding no federal subject matter jurisdiction as the plaintiff had a state law claim in which a violation of the federal statute was as an element).

Here also, Congress did not create a private right of action under the TAA; however, unlike the plaintiff in *Merrell* who was asserting a state law claim, Blackhawk has a basis for federal jurisdiction pursuant to § 1331 and a right of action under APA § 702. Thus, *Merrell* is not controlling.

The test articulated in *Healthtek Solutions, Inc. v. Fortis Ben. Ins. Co. ("Healthtek")*, 274 F.Supp.2d 767 (E.D.Va.2003) supports Blackhawk's position. In *Healthtek*, the court cited *Merrell* and *Mulcahey*, finding no jurisdiction over the plaintiff's state law claim simply because the complaint mentioned a federal statute, HIPPA. *Id.* Further, the court interpreted *Mulcahey* to provide the following test: "federal question jurisdiction is proper only if: (1) the federal statute cited in the complaint provides for a private right of action, and (2) the plaintiff is not barred from utilizing the private right of action." *Id.* at 774.

Here, the APA, not the TAA, is the federal statute cited in the complaint. Further, it is the APA, not the TAA, that provides the private right of action under § 702, therefore part one of the test is satisfied. As to part two, while the TAA creates no private right of action, neither does it preclude such private action, as discussed in the section which follows.

**B. The TAA does not preclude Blackhawk from bringing this claim.**

■ Exceptions to judicial review under 5 U.S.C. § 701 should be narrowly construed as § 701 establishes a strong presumption of reviewability. *Chaney v. Heckler*, 718 F.2d 1174 (D.C.Cir.1983), reh'ing denied, 724 F.2d 1030, and rev'd on other grounds, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714. Restricting judicial review requires clear and convincing evidence of legislative intent. *Carson–Truckee Water Conservancy Dist. v. Watt*, 537 F.Supp. 106 (D.Nev.1982). The "presumption of reviewability may be overcome by 'specific language, or specific legislative history,' 'contemporaneous judicial construction barring review and congressional acquiescence in it,' or 'inferences of intent drawn from statutory scheme as whole.' " *Banzhaf v. Smith*, 737 F.2d 1167 (D.C.Cir. 1984), quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984).

■ The language of the TAA does not preclude judicial review of agency action. The TAA does not create a right of action of the type asserted by Blackhawk here; however, such a right already existed under the laws of the United States at the time of the enactment. The GSA points to TAA § 2504(d) which states that there will be no "private right or remedy for which provision is not explicitly made under this Act or under the laws of the United States." 19 U.S.C. § 2504(d). To determine what rights are explicit under the laws of the United States for purposes of the TAA, one must look to the rights that existed at the time of the enactment of the TAA.

When the TAA was enacted in 1979, the APA was already in existence. Further, three years earlier in 1976, Congress had amended § 1331 with the express purpose of creating general jurisdiction for review of agency decisions. *See Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Thus, Congress, when enacting the TAA in 1979, was aware of the 1976 amendment to § 1331 and presumably the holding in *Califano*, in which the Court had recognized that Congress intended through the amendment to confer to the courts general jurisdiction to hear

cases of claimants seeking review of agency actions. Therefore, it is reasonable to assume that Congress knew that both jurisdiction pursuant to § 1331 and a right of action under APA § 702 existed "under the laws of the United States" when it enacted the TAA.

Congress has shown itself capable of using language expressly precluding judicial review of agency action when it has intended to do so. For example, in the Social Security Act ("SSA"), Congress stated, "no action against the United States, the Secretary, or any officer or employee thereof shall be brought under (s 1331 et seq.) of Title 28 to recover on any claim arising under this subchapter." [8] See SSA 42 U.S.C. § 405(h). Further, the Supreme Court recognized that by using this language Congress intended to so limit judicial review of agency action under the SSA. See Califano, 430 U.S. 99 at 104, 97 S.Ct. 980, 51 L.Ed.2d 192. Thus, Congress could have used that language when enacting the TAA if it had so desired to limit jurisdiction.

Blackhawk is not bringing a claim under the TAA; it is suing under the APA. Blackhawk is claiming that the agency acted in contravention to the TAA or "not in accordance with law" when the GSA determined that Blackhawk's products did not fit under the "war materials" exemption in FAR § 25.401(a)(2). Similarly in *Megapulse*, the Court of Appeals for the District of Columbia found that a supplier was challenging agency action and suing under the APA when it alleged that the official's decision to disclose protected data would violate the Trade Secrets Act. See *Megapulse, Inc. v. Lewis* 672 F.2d 959, 966 (D.C.Cir.1982). Thus, Blackhawk's claim is not precluded by the TAA.

GSA cites *Arrowhead Metals, Ltd. v. U.S.* ("*Arrowhead*"), 8 Cl.Ct. 703 (1985) for the proposition that a claim cannot be premised on the TAA. In *Arrowhead*, the Claims Court had jurisdiction pursuant to 28 U.S.C. § 1491(a)(3) to grant equitable relief involving government contracts prior to the awarding of those contracts. *Id.* at 703. The plaintiff had challenged the bid solicitation cancellation, claiming that the cancellation lacked a rational basis. *Id.* One of the criteria for proving that a bid cancellation lacks a rational basis is that the action violates a statute. *Id.* at 712. The plaintiff claimed that the agency had violated the TAA. *Id.* at 703. The court mentioned that the TAA itself does not provide a private right of action; however, it did go on to analyze whether the violation of the TAA occurred. *Id.* at 715. The court ultimately found that this claim was a recasting of plaintiff's earlier prejudice claim and was likewise not supported by the evidence. The relevant point, however, is that the Court did analyze whether an agency violation of the TAA supported plaintiff's claim that the agency action lacked a rational basis. Similarly, Blackhawk is alleging that an agency violation of the TAA supports its claim that the agency acted arbitrarily, capriciously, and contrary to the law.

## C. The Contract Disputes Act ("CDA"), 41 U.S.C. §§ 605, 607, 609

The CDA is not applicable and thus Blackhawk's claim does not have to be brought in Claims Court.

■ The CDA is a comprehensive scheme for resolving contract disputes between the government and its contractors. *U.S. v. J & E Salvage Co.* 55 F.3d 985, 987 (4th Cir.1995) ("*J & E*"). "The review procedures under the CDA are exclusive

8. Compare with TAA § 2504(d), there will be no "private right or remedy for which provision is not explicitly made under this Act or under the laws of the United States."

of jurisdiction in any other forum. 41 U.S.C. § 605(b) (case citation omitted). Thus, the federal district courts lack jurisdiction over government claims against contractors which are subject to the CDA." *Id.* However, courts must make a distinction between the claims that fall under the CDA and those that are based on "grounds other than a contractual relationship with the government." *Megapulse, Inc. v. Lewis* ("*Megapulse*"), 672 F.2d 959 (D.C.Cir. 1982).[9] "Although it is important on the one hand to preserve the Tucker Act's limited and conditioned waiver of sovereign immunity in contract actions, we must not do so in terms so broad as to deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government." *Megapulse*, 672 F.2d 959. For the *Megapulse* court, "the determination [of whether an action is that of contract] depends on the source of the rights upon which the plaintiff bases its claims and upon the type of relief sought." *Id.* at 968.

In *Megapulse*, the plaintiff sued under APA § 702 in order to enjoin the Coast Guard from revealing proprietary data submitted to it in connection with a contract for the development of a navigational system. *Id.* at 959. The court noted that Megapulse "does not claim a breach of contract, it has limited its request for relief to only six documents 'reflecting the essence of the proprietary technology developed ... prior to the parties' first contract,' it seeks no monetary damages against the United States, and its claim is not properly characterized as one for specific performance." *Id.* at 969. Even though Megapulse was a party to contract with the government, the court still found that their claims were not sounding in contract. *Id.* at 971. Thus, the court had jurisdiction pursuant to § 1331 as Megapulse was alleging under APA § 702 that the Coast Guard violated The Trade Secrets Act. *Id.* at 971. *See also Westech Gear Corp. v. Dep't. of Navy* 733 F.Supp. 390, 391 (D.D.C.1989) (finding that the plaintiff was not alleging breach of contract, but abuse of discretion by the Navy under APA § 706(2)(A) in not complying with the Department of Defense Federal Acquisition Regulations ("DFARS"). Plaintiff had sued the Navy when the Navy decided to reverse engineer plaintiff's ram tensioners.)

Here, Blackhawk is not even a party to a contract with GSA and is not claiming contract remedies. Further, like *Megapulse*, Blackhawk is alleging that the agency acted not in accordance with law.[10] Thus, the CDA does not apply.

GSA's claim that "all of GSA's contractor dealers could contest GSA's interpretation or enforcement of its contracts in District Court merely by invoking the APA," *see* GSA's Reply, Doc 29, p. 2., is not appropriate. The courts in *Megapulse* and *J. & E.* make a distinction between those claims sounding in contract and those not. If the contractors were suing on a contract claim, jurisdiction would still lie with the Claims Court. Here, not only

---

9. In *J & E*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") cites *Megapulse* throughout the opinion, adopts much of the language (but not the test), and supports the analysis. Also, although *Megapulse* cites the Tucker Act and the Fourth Circuit cites the CDA, the Fourth Circuit indicates that the analysis should be the same under both. *See J & E.* 55 F.3d at 988 ft. 1.

10. Compare with *J.E.* 55 F.3d at 988. "The merits question presented is one of contract interpretation, *i.e.*, did the bill of sale and the accompanying DRMO sales pamphlet allow a transfer of ownership of the hidden transmissions along with the containers purchased at the auction. This is a classic 'scope of the contract' issue."

is Blackhawk not suing for breach of contract, but it is not even a contractor. Thus, a finding of jurisdiction here would do nothing to redirect contractors' contract claims from the Claims Court to District Courts.

## II. Standing

■ Blackhawk has standing under the APA to bring its claim as it satisfies both the Constitutional and the prudential requirements.

### A. Constitutional Requirements

To meet the Constitutional requirements for standing, a plaintiff must allege three things: 1. he has suffered or will imminently suffer an injury; 2. the injury is fairly traceable to the defendant's conduct; and 3. a favorable court decision will address the injury. Erwin Chemerinsky, *Federal Jurisdiction* 60 4th ed. (2003) ("Chemerinsky"), citing *Bennett v. Spear* 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *N.E. Fla. Contractors v. Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). In this case, it appears to be uncontested by GSA that Blackhawk meets the constitutional requirements for standing. *See* Defendant's Mem. in Support of the Mot. to Dismiss, Doc. 27, p. 11. "It is not enough for Blackhawk to claim standing due to its claim of an in-fact injury." *Id.*

### B. Prudential Requirements

In addition to the Constitutional requirements, the Supreme Court has also recognized several prudential requirements, *see* Chemerinsky at 60, which may be overcome by statute, *see Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). These requirements are: 1. that a plaintiff may assert only his rights; 2. that a plaintiff may not sue as a taxpayer; and 3. that the plaintiff's claim must fall within the zone of interests protected by the statute in question. *See* Chemerinsky at 60. Here, Blackhawk is asserting its own rights and is not suing as a taxpayer. The issue to be decided is whether Blackhawk falls within the zone of interests protected by the statute in question.

Blackhawk does.

■ "[T]he Administrative Procedure Act grants standing to a person 'aggrieved by agency action within the meaning of a relevant statute.'" *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), quoting 5 U.S.C. § 702. To meet this requirement a plaintiff's interest must fall "within the zone of interests to be protected or regulated by the statute." *Id.* at 153, 90 S.Ct. 827. The Court has said recently that the test is "not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." *See Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987); *but see Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) (concluding that a person can claim to be within the zone of interests of a statute only if Congress indicates such through the text of the statute or the legislative history). Further, the Fourth Circuit in *TAP Pharmaceuticals v. U.S. Dept. of Health & Human Services* ("TAP") 163 F.3d 199, 203 (4th Cir.1998) cited the recent Supreme Court decision in *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 492, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) ("NCUA") as follows: "in applying the 'zone of interests' test, we do not ask whether, in enacting the statutory provision at issue, Congress specifically intended to benefit the plaintiff. Instead, we first discern the interests 'arguably ... to be protected' by the statutory provision at issue; we then

inquire whether the plaintiff's interests affected by the agency action in question are among them." (emphasis added). Relevant to the determination of the interests are the words of the statute and legislative history. *See Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991). Sufficient injury can result from government over-regulation as well as under-enforcement. *TAP*, 163 F.3d at 207 ("Where, as in the instant case, commercial interests are concerned, this legislative restraint can be presumed to indicate a Congressional intention to protect the interests of the competitors of the parties regulated from encroachment beyond that caused by the statute's terms.") Where a statute defines a group that is subject to its provisions, a party asserting commercial interests satisfies the zone of interests test for prudential standing to challenge statute only if its interests put it in the same position as a member of the subject group or a commercial competitor of such a member, *see TAP*, 163 F.3d at 207; however, the party must be more than a mere incidental beneficiary, *id.* at 206.

The principles and test applied in *TAP* indicate that Blackhawk's interests fall within the zone of interests to be protected or regulated by the TAA. In *TAP*, the court found the purpose of the Medicare Act to be to provide affordable quality drugs to seniors. *Id.* at 205. Thus, the beneficiaries were the elderly, not the drug companies; consequently, the drug companies did not have standing. *Id.* at 208.

The purpose of the AGP enacted by the TAA was to benefit the suppliers and producers of countries that are parties to the AGP. 19 U.S.C. § 2511(a) authorized the President to waive or modify discriminatory purchasing requirements for government procurement of "eligible products" of foreign countries that are parties to the AGP and the "suppliers of such products." 19 U.S.C. § 2512(a) authorized the President to prohibit the procurement of products from countries that are not parties to the AGP in order "to provide reciprocal competitive government procurement opportunities to United States products and suppliers of such products...". Further, the Preamble [11] and Article II [12] of the AGP refer to the benefit to both suppliers and producers.

Blackhawk has been a producer/supplier, but even if it is not considered a supplier at this moment, Blackhawk is a competitor of suppliers. Further, even if Blackhawk is not a member of the class that supplies products to the government or even a competitor of those suppliers since it is not located in a designated country, Blackhawk is a producer/supplier or competitor of those who are eligible for the "war materials" exemption. Both the AGP and the regulations promulgated pursuant to the TAA contemplated some group of producer/suppliers not from sig-

---

11. "Recognizing that laws, regulations, procedures and practices regarding government procurement should not be prepared, adopted or applied to foreign or domestic products and to foreign and domestic suppliers so as to afford protection to domestic products or suppliers and should not discriminate among foreign products or suppliers." Preamble to the AGP.

12. With respect to all laws, regulations, procedures and practices regarding government procurement covered by this Agreement, the Parties shall provide immediately and unconditionally to the products and suppliers of other Parties offering products originating with the customs territories (including free zones) of the Parties, treatment no less favourable than:

(a) that accorded to domestic products and suppliers; and
(b) that accorded to products and suppliers of any other Party. AGP Article II:1.

natory countries who could supply products through the "war materials" exemption. Thus, Blackhawk's interests are at least "arguably" protected by the TAA and Blackhawk has standing under the APA.

**III. The Contracting Officer's ("CO") application of the "war materials" exemption is not committed to unfettered agency discretion, but must be exercised consistent with law.**

There is a strong presumption that Congress intends judicial review of administrative action. *See Inova Alexandria Hosp. v. Shalala ("Inova")*, 244 F.3d 342, 346 (4th Cir.2001), quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). However, under APA § 701(a)(2), courts are not to review agency action when that "agency action is committed to agency discretion by law." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). This narrow exception is applicable when the statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* In other words, "the legislative history of the Administrative Procedure Act indicates that it [§ 701(a)(2)] is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), quoting S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945). A meaningful standard can be found not just in statutes, but in regulations as well. *Inova*, 244 F.3d at 346.

The CO's definition of products that meet the "war materials" exemption are "those items used only by DoD in a war situation" (2nd Stoker ¶ 39). (*See also* Castle–Higgins ¶ 10, "Blackhawk's products were 'not used exclusively by the DoD for military purposes and were not used exclusively in a war environment.'") This definition is clearly more restrictive than that laid out by the AGP and the FAR regulation implementing the TAA. ("acquisitions of arms, ammunition, or war materials, or purchases indispensable for national security or for national defense purposes..." FAR § 25.401(a)(2)). Thus, the CO's definition can be judged arbitrary and capricious and not in accordance with law when compared to the text of both the AGP and the regulation. *See. e.g., Chrysler Corp. v. Brown*, 441 U.S. 281, 317–18, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (finding that judicial review was possible as the Trade Secrets Act placed "substantive limits on agency action").

GSA argues, *see* Doc 27, that such decisions are in the CO's discretion, citing FAR § 1.102–3(a). However, careful reading of the regulation supports a conclusion that the CO's decision must be subject to judicial oversight. FAR § 1.102–3(a) states: "Government members of the Team must be empowered to make acquisition decisions within their areas of responsibility, including selection, negotiation, and administration of contracts *within Guiding Principles*. In particular, the contracting officer must have the authority to the maximum extent practicable and *consistent with law,* to determine the application of rules, regulations, and policies, on a specific contract." (emphasis added). Thus, although the CO has discretion, that discretion must be exercised consistent with law. In its opinion granting the preliminary injunction, this Court found that GSA acted arbitrarily and capriciously and therefore not consistent with law.

## CONCLUSION

GSA's Motion to Dismiss is **DENIED.** This Court does have jurisdiction pursuant

to 28 U.S.C. § 1331 to hear claims brought under the Administrative Procedure Act § 702 challenging agency action. The Contract Disputes Act is not applicable and thus Blackhawk's claim does not have to be brought in Federal Claims Court. The TAA does not preclude Blackhawk from bringing this claim. Additionally, Blackhawk has standing under the Administrative Procedure Act as Blackhawk satisfies both the constitutional and the prudential requirements. Further, the Contracting Officer's application of the "war materials" exemption is not committed to unfettered agency discretion, but must be applied consistent with law.

The Clerk is REQUESTED to send a copy of this order to all counsel of record.

It is so ORDERED.